## HEPDING ET UX. *v.* THE DEBRA CORPORATION

[No. 311, September Term, 1968.]

*Decided July 10, 1969.*

642

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Bernard F. Goldberg,* with whom was *Paul E. Krieger* on the brief, for appellee.

*Joseph Pickus,* with whom was *I. Wm. Schimmel* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal presents to us the question of whether or not the trial court (Mayfield, J.) was clearly in error in declining to disallow certain items claimed by the builder, The Debra Corporation (Debra), appellee in this Court and plaintiff in the trial court, in a suit to enforce a mechanics' lien asserted by Debra against the land and dwelling of the appellants, James A. Hepding and Ann M. Hepding, his wife, who were defendants below. There are no questions presented in regard to the form of the mechanics' lien asserted by Debra, the description of the property or the proper giving of the required notice to assert the lien. There is no contention that the work was defective.

In the early part of July 1966, Debra, through its president, Raymond W. Griffith, and the Hepdings entered into an oral contract whereby Debra was to construct a dwelling for the Hepdings on a lot containing 21,600 square feet, known as 3 Allview Drive, Simpsonville, Howard County. Mrs. Hepding had prepared a sketch of the proposed construction which was used by an architect

to prepare the plans. There was no total cost figure agreed upon, although Mr. Hepding testified that he did not want the total cost of the dwelling to exceed $30,000. Mr. Griffith testified that the figure of $30,000 was mentioned when the oral contract was made but that the figure was "an estimate." Debra was to supervise the construction and was to receive a $2,000 "supervision fee" as its profit on the project. The estimated time for the completion of the work was ninety days. The Hepdings agreed to pay the bills for labor and materials used in the construction when presented to the office of the attorney for the Hepdings. All disbursements were to be made from that office but only upon the prior approval of Mr. Hepding.

This method of billing and disbursement continued for a while, but eventually Mr. Hepding authorized the secretary to his counsel to make disbursements without having received or seen any bills. The secretary testified that the Hepdings placed approximately $37,000 in her hands for disbursement for the construction costs. When approximately $23,000 had been disbursed she told Mr. Griffith that she needed bills to support the previous payments at which time Mr. Griffith had brought her "a stack of bills." At one time during the construction, Mrs. Hepding had expressed concern in regard to the rising costs of the dwelling, but no maximum cost figure was ever established.

The dwelling in question is a stone ranch-type home with three bedrooms, three bathrooms, a living room, dining room, kitchen, den, porch and garage all on the first floor, with a family room, laundry, powder room, bar, utility and storage rooms in the basement or lower floor, part of which is unexcavated. The photographs of the completed home indicate that it is well-built, with a modern kitchen, and that it generally has superior appointments for this type of house. The testimony indicated that from time to time there were changes in the plans for certain interior construction which increased the cost of construction and delayed the completion of the work.

Construction began on July 21, 1966 and was not completed until some time in April of 1967, a period of approximately nine months instead of the estimated three months.

The final bill submitted by Debra to the Hepdings on May 1, 1967, was as follows:

"Balance brought forward ............... $22,196.81
   (total of invoices presented to Mr.
   and Mrs. Hepding for payment
   prior to presentation of the
   final bill)

Materials and Miscellaneous ............ $ 8,269.09
   (all presented for the first time
   in the final bill)

Labor ............................................. $14,076.60

                                            $44,542.50

Payments received ........................... −37,399.51

Sub-balance ..................................... $ 7,142.99
Bookkeeping Expenses ................... 450.00
Profit per agreement ....................... 2,000.00
Charge for additions and changes.... 1,000.00

Balance due ..................................... $10,592.99"

The mechanics' lien asserted by Debra is for the claimed balance of $10,592.99.

Included in the item of $8,269.09 marked "Materials and Miscellaneous" are the following charges:

1. Rental of Trucks, Loaders, Back-
   hoes                                 $ 3,277.00
2. Lee Rose and Truck ("haul-
   ing")                                     247.00
3. Lee Rose (Supervision)         800.00

The item of $14,076.60 for labor includes the charges:

1. Carpenters (Rough and Finish)   $12,639.10
2. Common Labor                   1,257.50
3. Sam Moore, additional job       180.00

               Total ................... $14,076.60

In explanation of the first mentioned charge for carpenter labor of $12,939.10, Mr. Griffith itemized it as made up of the labor of three carpenters and an item of carpentry work of $492.00 for a subcontractor, B & I Construction Company, as follows:

1. James Barrick (981½ hrs. at
                  $4.50 an hour)    $4,416.75
2. Frank Cameron (847 hrs. at
                  $2.50 an hour)     2,117.50
3. Jack Johnson (885 hrs. at $3.00
                      an hour)       2,655.00
4. Subcontractors                      492.00
                                   _____
             Total ....... ..  ....... $9,681.25

The total given by Mr. Griffith was $9,680.17, representing a slight error in calculation. The correct difference between the $12,639.10 figure given for carpenter labor and the amount of $9,681.25 is $2,957.85. Mr. Griffith indicated that the difference was $2,958.93 (reflecting the error in addition mentioned). Mr. Griffith acknowledged that this was an overcharge. His testimony was:

"Q. So there's twenty-nine hundred and fifty-eight dollars and ninety-three cents ($2958.-93) in carpenters, assuming what you say so far is correct, that that would be out. Isn't that correct?

"A. That's right."

Jacob Schwartz, a part time accountant, who made up the payroll records, including the withholding tax records, for Debra, testified that the information in regard to the time spent by the carpenters on the Hepding job as well as the amount of time for the equipment was telephoned in to him at the end of each week by Mr. Barrick, or in some instances by Lee Rose. Based on that in-

formation Mr. Schwartz issued the pay checks and made up the payroll records.

Mr. Barrick, called by the Hepdings as a witness, testified that he did the principal part of the carpentry work on the Hepding dwelling and he kept a daily record of the time he had spent working on the Hepding dwelling. His records indicated that he had spent 720½ hours on the job at $4.50 an hour or a total of $3,242.25 (versus 981½ hours and a charge of $4,416.75 claimed by Debra). He also testified that he was on the job every day from November 1966 to March 1967 and that Mr. Johnson during that period only spent approximately two weeks on the job.

Frank Patrick Cameron, a carpenter who worked on the Hepding job, called as a witness by the Hepdings, also kept a daily record of the time he spent working on the Hepding job. His total number of hours was 909½ hours at $2.50 an hour, a total of $2,273.75 (versus 847 hours and a total of $2,117.50 claimed by Debra) or $156.25 *more* than the amount claimed by Debra.

Both Mr. Barrick and Mr. Cameron testified to various removals of materials from the Hepding job during the course of construction but their testimony was vague in many instances in this regard as they made no memoranda indicating the removals and there was no evidence to indicate conclusively that if the materials were removed, a proper accounting had not been made by Debra for such removed materials.

There was also evidence that both Mr. Barrick and Mr. Cameron had had difficulties with Mr. Griffith which might indicate some hostility on their part toward him. The trial judge, however, accepted their testimony in regard to the numbers of hours worked and *deducted* the amount of $1,173.92 (the difference between the Debra claim and the Barrick figure, but *added* the amount of $156.25, the difference between the Cameron figure and the lesser amount claimed by Debra. The trial court men-

tioned in its opinion that both Mr. Barrick and Mr. Cameron had testified that Mr. Johnson had only worked approximately two weeks while Debra claimed $2,175.00 for the Johnson work which "would represent considerably more time than the approximately two weeks referred to by the two witnesses." The trial court, however, did not deduct any part of the Johnson time from the Debra claim, although, as indicated, it did accept the testimony of Barrick and Cameron in regard to their own time sheets on the job.

Mr. Hepding testified that the total cost of the house, not including the amount involved in this appeal and excluding the cost of the lot, was approximately $70,000.00. In connection with the charge for trucks, loaders, and backhoe in the amount of $3,267.00 (which Mr. Griffith had broken down as a backhoe, 118 hours at $12.00 an hour, $1,416.00; front-end loader, 127¾ hours at $12.00 an hour, $1,543.00—actually $1,533.00—and trucks $318.-00, totalling $3,277.00 according to his calculations) Mr. Hepding testified that he visited the site of the work almost every day and that he had never observed the equipment working on rainy days. He stated that at various times the equipment was taken away and then brought back to the site where it was left sitting, without use. Local climatological reports of precipitation in the months of July, 1966 through March, 1967 were introduced into evidence. These show that during this period there were eleven days showing precipitation. One of these days, February 18, 1967, indicates .17 inches of rain and 2.3 inches of snow and sleet. On this same day there was a backhoe charge of eight hours. Including this charge and the other charges for backhoe on the days on which there was precipitation, the total is for 35½ hours of backhoe time. Also on the same days 26¼ hours of loader time were charged, a total of 61¾ hours of time for these two pieces of equipment on the days on which there was precipitation. As this time was charged for on the basis of $12.00 an hour, if credit were given for the 61¾ hours at that

price, a credit to the Hepdings of $741.00 would be granted, but the trial court, in its written opinion, did not consider this testimony or give any credit to the Hepdings based upon it.

Jesse Steiner, a professional civil engineer and an expert in construction cost analysis, testified for the Hepdings. He graduated from the College of the City of New York in 1937, has done construction estimating for some of the larger companies in the City of New York and in Washington, D. C. He listed a number of construction companies for which he has done construction estimating as well as two municipal governments for which he has done similar work. He has testified as an expert in the Maryland Courts in Baltimore City and Prince George's County as well as in New York City. His qualifications as an expert are conceded by Debra.

Mr. Steiner testified that he made two visits to the site and spent approximately eight hours in making his inspection of the completed house. He gave a detailed account of the materials required and used as well as the number of hours and cost of the required labor. His testimony as well as his letter of September 18, 1967 to the Hepdings and supplementary exhibit, gave 34 separate items of labor and materials. He calculated that the cost of construction of the house as originally planned, allowing for the builder's overhead and profit, would be $43,-973.60 at an actual cost to the builder of $38,072.56. The house, giving effect to the changes made in the original plans, would cost $53,827.43, with an allowance for overhead and profit, or would cost $46,603.91 without any allowance for the builder's overhead and profit. When asked by the trial court what his explanation was for the difference between his figures and the ultimate cost to the Hepdings, he replied that the Hepdings "had been taken."

The trial court made a net allowance of $3,267.67 to the Hepdings from the mechanics' lien of $10,592.99, leaving a balance of $7,325.32. These items are as follows:

| | |
|---|---:|
| 1. Difference between the Barrick wage figures | $1,173.92 |
| 2. Supervision by Lee Rose | 800.00 |
| 3. Bookkeeper | 450.00 |
| 4. Additional charge by Debra for supervision because of changes in plans, etc. | 1,000.00 |
| | $3,423.92 |
| 5. Credit on Cameron's wage figures | 156.25 |
| Net deductions allowed | $3,267.67 |

In our opinion these allowances to the Hepdings were proper and in any event, there is no cross appeal by Debra so that the propriety of these allowances is not before us.

The Hepdings contend that the trial court clearly erred in five regards, as follows:

1. In failing to allow the Hepdings a deduction for the discrepancy of $2,957.85 between the claimed amount for carpentry of $12,639.10 and the breakdown of the amount by Mr. Griffith of $9,681.25.
2. In failing to allow a deduction for the carpentry time charged for Mr. Johnson in excess of the actual time he worked on the house.
3. In failing to allow a deduction for the overcharge for the use of the backhoe and loader.
4. In failing to allow a deduction for the item of $247.00 "hauling" expense of Mr. Rose.
5. In failing to allow a deduction for material removed from the site subsequent to delivery to the site.

We will consider these contentions in the order indicated.

### 1.

In our opinion, it was clearly erroneous (see Maryland Rule 886 a) for the trial court to have failed to allow the

Hepdings a deduction for the discrepancy of $2,957.85, representing the difference between the total amount of $12,639.10 claimed by Debra for carpentry, and the total of the breakdown of that figure by Mr. Griffith amounting to $9,681.25. We have already given the details of the breakdown and they need not be repeated here. In view of Mr. Griffith's concession that the discrepancy "would be out", the trial court should have given the Hepdings this deduction. Inasmuch as there is no mention of this item in the trial court's opinion, we rather think that this item was inadvertently overlooked by the trial court.

We are mindful of Maryland Rule 886 which provides that when a case has been tried before the lower court without a jury, the judgment of the lower court will not be set aside on the evidence unless clearly erroneous, with due regard being given to the opportunity of the lower court to judge the credibility of the witnesses. As our predecessors aptly observed, however, in *Goodwin v. Lumbermens Mut. Cas. Co.*, 199 Md. 121, 129-30, 85 A. 2d 759, 763 (1952) :

> "If the trial court does not say what it finds to be the facts, no presumption as to them arises merely from the decision. Obviously, then, if there is no factual statement or conclusion, there is no reason for the appellate court to examine the record with an evidentiary slant in favor of the appellee in order to sustain a nonexistant presumption."

*Goodwin* was recently cited with approval and followed by us in *Burroughs International Co. v. Datronics Engineers, Inc.*, 254 Md. 321, 255 A. 2d 341 (1969).

### 2.

In our opinion, the trial court was clearly in error in failing to make an allowance to the Hepdings for an overcharge in the item of carpentry for Mr. Johnson. Plaintiff's Exhibit No. 5 gives the dates and number of hours worked by Barrick, Cameron and Johnson on the Hepding

job. It was testified by Mr. Schwartz, the part time accountant for Debra, who processed the payroll records and allocated the time to the various jobs, that Mr. Barrick usually telephoned in to him the numbers of hours worked by the carpenters on the Hepding job and occasionally Mr. Rose would call them in. In short, Mr. Barrick was the principal source of the information appearing on the payroll records for carpentry work. Both from Mr. Barrick's testimony and from the exhibits offered by Debra, it appears that Mr. Barrick was present on the Hepding job at all times when Mr. Johnson allegedly worked on the job, except for the week ending October 6, 1966 and during the last three weeks of work ending March 9, 16, and 23, 1967. Both the records offered by Debra and the testimony of Mr. Cameron establish that he was present on the job when Mr. Johnson allegedly worked there except for the week of February 16, 1967 (when Cameron said he was ill and left the job) and for the last four weeks of work ending March 2, 9, 16, and 23, 1967. As we have indicated, Mr. Barrick and Mr. Cameron both testified that Johnson was not working on the Hepding job except for an approximately two week period, and their testimony in this regard was not impaired on cross-examination. The trial court, as we have observed, *accepted their testimony* in regard to their own time contrary to the items in Plaintiff's Exhibit No. 5, and we can see no reason why their testimony in regard to Johnson, and the time he spent working on the Hepding job, which is not contradicted by the testimony or deposition of either Johnson or Rose, should not likewise be accepted. This is particularly true in regard to Mr. Barrick who was the admitted *source of the information* in Debra's records regarding the carpenters' time. If allowance to Debra were made for the Johnson carpentry work for the *three* weeks ending October 13, 20, and 27, in the total number of 107 hours and for the last *four* weeks ending March 2, 9, 16, and 23, 1967, in the total of 124 hours (a most generous allowance for the Johnson time in view of the testimony) would be a total of 231

hours at $3.00 an hour or $693.00 as compared with the $2,655.00 (885 hours at $3.00 an hour) charged on Plaintiffs' Exhibit No. 5. In summary, giving the most favorable consideration to the Johnson charge justified by the evidence, it is our opinion the trial court should have allowed the Hepdings a deduction of $1,962.00 for this overcharge, the difference between the $2,655.00 as claimed and the $693.00 properly and generously allowed for the Johnson carpentry work. As we indicated above, the trial court mentioned the testimony of Barrick and Cameron in this regard but did not give effect to this testimony. In our opinion, it was clearly erroneous not to have made the allowance to the Hepdings we have mentioned. Then too, the elimination of this overcharge for Johnson's carpentry time would bring the time of carpenters for the Hepding job more closely in line with the uncontradicted evidence of Mr. Steiner of the amount of carpenters' time reasonably needed for the completed job of approximately $5,200.00, including helpers. The adjusted charge for carpentry work would then be as follows:

| | |
|---|---|
| Barrick | $3,242.25 |
| Cameron | 2,273.75 |
| Johnson | 693.00 |
| Subcontractor | 493.00 |
| | $6,702.00 |

This figure of $6,702.00 is $1,502.00 or approximately 29% higher than the Steiner estimate, but would appear to be far more realistic than the $9,681.95 charge for carpentry work initially allowed Debra by the trial court which is $4,481.95 or approximately 85% higher than the Steiner estimates.

### 3. and 4.

In our opinion, the trial court was clearly in error in failing to allow a deduction to the Hepdings for the time when the backhoe and loader were shown by the testimony not to have been used on the site because of weather conditions on the days in question. It is common knowledge

that the backhoe and loader would not be used on rainy days or on days when it snowed. The uncontradicted evidence, established by the documents of Local Climatological Data for the Baltimore Area of the United States Department of Commerce indicated that there was precipitation during 11 days of the period listed in the Debra Exhibit. Mr. Hepding testified, without contradiction, that he was at the site substantially every day and that neither the backhoe nor the loader were worked on rainy days and indeed on other days as well. We cannot give any credit for these "other days", which were not identified or substantiated, but it is clear to us that in the absence of any refutation of the testimony in regard to the rainy days, the trial court was clearly in error in not allowing a deduction of $741.00 for this overcharge, the details of which we have already given.

We are also of the opinion that the trial court was clearly in error in not allowing the Hepdings a deduction of $247.00 for the alleged "hauling" expenses of Lee Rose. Mr. Griffith testified that Mr. Rose was not an employee of Debra but claims were made by Debra for $800.00 for Rose's alleged time on the job as well as the $247.00 for which no bill was available but which represented a figure that Mr. Rose had estimated to be a reasonable amount for the cost of operating his truck and Debra "just accepted Mr. Rose's figures." Mr. Rose was not produced as a witness nor was there any attempt to take and offer his deposition to substantiate this "estimate." The trial court, as we have stated properly disallowed Debra the $800.00 item but although it mentioned this claim along with the $800.00 item ultimately disallowed, did not mention further the $247.00 item. This too might well have been an oversight, but, in any event, it was clearly erroneous in our opinion, to have failed to allow the Hepdings an allowance for the claim of $247.00.

### 5.

In our opinion, the testimony in regard to the material

removed from the site after delivery there, was not sufficiently definite for us to hold that the trial court was clearly in error in not making an allowance for this item as a deduction to the Hepdings. Then too, Mr. Griffith denied that any materials were recovered from the site other than those for which credit was given the Hepdings.

As we have indicated, it is our opinion that the trial court was clearly in error in not allowing the Hepdings deductions for the following four items:

| | | |
|---|---|---|
| 1. | Discrepancy in carpentry work claimed | $2,957.85 |
| 2. | Deduction for Johnson overcharge | 1,962.00 |
| 3. | Overcharge for backhoe and loaders | 741.00 |
| 4. | Disallowance of hauling claim by Rose | 247.00 |
| | Total | $5,907.85 |

This amount of $5,907.85 should be deducted from the $7,325.32 set forth in the decree of July 31, 1968, so that the decree should be modified by reducing the amount of $7,325.32 to $1,417.47 and, as modified, should be affirmed.

*Decree of July 31, 1968, modified by reducing the amount of $7,325.32 set forth therein to $1,417.47, and as modified affirmed, one-fifth of the costs to be paid by the appellants and the remaining four-fifths of the costs to be paid by the appellee, the Debra Corporation.*